**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

AUBREY C. AVERY, JR., )
)
           Plaintiff, ) Case No.: 2:16-cv-01774-GMN-EJY
)
vs. )
) **ORDER**
LAS VEGAS METROPOLITAN POLICE )
DEPARTMENT, *et al.*, )
)
           Defendants. )
)

Pending before the Court is the Motion for Summary Judgment, (ECF No. 67), filed by Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Officer Michael Donovan, Officer David Brisendine, and Officer Christian Parquette (collectively, "Defendants"). Plaintiff Aubrey C. Avery ("Plaintiff") did not file a response. Also pending before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 72), to which Defendants filed a Response, (ECF No. 76). For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**I.    BACKGROUND**

Plaintiff filed this action under 42 U.S.C. § 1983 based on claims of excessive force during arrest and deliberate indifference to medical needs after being brought to the Clark County Detention Center ("CCDC") for booking. The events giving rise to Plaintiff's claims occurred on December 31, 2014, while Plaintiff rode in a car with several other individuals. Officers Donovan and Parquette conducted a stop of the car and asked the occupants to exit after discovering that the car's license plates were suspended. (Decl. Arrest, Ex. A to Defs.' MSJ, ECF No. 67-1). While outside the car, Officers Donovan and Parquette began a pat down

search of the individuals, including Plaintiff, due to their suspicious behavior and clothing that could hide a weapon. (*Id.*) (noting that Plaintiff failed to initially answer questions about weapons in the vehicle, the car's driver did not provide a license, and there was high crime in the area). Officer Brisendine arrived at the scene around the time of pat down inspections to assist. (*Id.*).

While Officer Donovan approached Plaintiff to begin a pat down search of him, Plaintiff fled. (*Id.*); (Sec. Am. Compl. at 4, ECF No. 34). Officer Donovan pursued Plaintiff by foot, and Plaintiff subsequently tripped as he attempted to escape. (Sec. Am. Compl. at 4.). According to Officer Donovan, as Plaintiff fell he grabbed his pants and right waist, which he did again as he attempted to get up in a way that was "not a typical adjustment" and appeared to be an act of securing an unholstered firearm stored in Plaintiff's waist-line. (Decl. Arrest, Ex. A to Defs.' MSJ). Officer Donovan eventually caught Plaintiff and took him to the ground. (*Id.*).

According to Officer Donovan, Plaintiff continued to resist arrest, attempted to break free from Officer Donovan while on the ground, and seemed to be favoring his right waistline. (*Id.*). As the struggle continued, Officer Donovan struck Plaintiff with a closed fist once in the nose, causing it to swell and bleed. (*Id.*).

Plaintiff, by contrast, states that he immediately surrendered upon falling to the ground by raising his hands. (Sec. Am. Compl. at 4). He adds that Officer Donovan punched him in the nose when Plaintiff had his hands behind his back and was being handcuffed. (*Id.*).[1]

While in handcuffs, Officer Donovan conducted a search of Plaintiff and located a "loaded 9mm Ruger P89DC with an empty chamber and 9 rounds in the magazine in [Plainitff's] right waistband." (Decl. Arrest, Ex. A to Defs.' MSJ); (Sec. Am. Compl. at 4)

---

[1] Plaintiff alleges in the Second Amended Complaint that Officer Dononvan "began roughing him up and punching him" after taking him to the ground, (Sec. Am. Compl. at 4), though Plaintiff's statement of the facts within his Motion for Summary Judgment lists only one punch by Officer Donovan while being handcuffed. (Pl.'s MSJ at 4, ECF No. 72).

(conceding Plaintiff was "in possession of a firearm illegally"). Plaintiff states that upon discovery of the weapon and while still in handcuffs, Officer Parquette slammed Plaintiff's head into the police vehicle, causing additional damage to Plaintiff's nose. (Sec. Am. Compl. at 4).

After arrest, Plaintiff was transported to CCDC. (Decl. Arrest, Ex. A to Defs.' MSJ). Plaintiff states that officials at the facility failed to provide him with medical care upon his arrival, even though Plaintiff voiced pain and injury to his head and nose. (Sec. Am. Compl. at 6). Moreover, Plaintiff alleges that one nurse "not only refused to provide treatment," but also told Plaintiff that he "should shut up before you get hit again." (*Id.*).

Based on the actions by the Officers and officials at CCDC, Plaintiff filed this lawsuit on July 25, 2016, (Mot. Leave to Proceed in Forma Pauperis, ECF No. 1), asserting violations of his Eighth Amendment rights. The Court screened Plaintiff's initial Complaint pursuant to 28 U.S.C. § 1915A, resulting in dismissal of Plaintiff's claims with and without prejudice. (Order, ECF No. 6) (recommending dismissal of Plaintiff's claim against Douglas Gillespie with prejudice and dismissal of Plaintiff's Eight Amendment claim without prejudice); (Order, ECF No. 9). Plaintiff filed an Amended Complaint, (ECF No. 8), which the Court again screened resulting in dismissal of the asserted claims without prejudice. (Order, ECF No. 17). Plaintiff then filed his Second Amended Complaint on August 30, 2018, (ECF No. 18), asserting two claims under 42 U.S.C. § 1983 against Defendants: (1) violation of Fourth and Fourteenth Amendments; (2) violation of Fourth, Fourteenth, and Eighth Amendments.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that

may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable factfinder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

Defendants move for summary judgment on the basis that Plaintiff failed to provide evidence supporting his claims, and that qualified immunity shields the Officers from liability even if Plaintiff did support his claims with evidence. (Defs.' Mot. Summ. J. ("MSJ") 4:13–17:9, ECF No. 67).  In response, Plaintiff moves for summary judgment by arguing that Officer Donovan used excessive force during the arrest as evinced by the police report's stated facts. (Pl.'s MSJ at 1–6, ECF No. 72).  Plaintiff also contends that CCDC officials' failure to provide him with medical attention upon arrival warrants summary judgment in his favor. (*Id.*).  The below discussion addresses summary judgment with Plaintiff's claims in turn, beginning with Plaintiff's first claim of excessive force in violation of the Fourth Amendment.

### A. Violation of the Fourth Amendment: Excessive Force

To determine whether summary judgment is appropriate with Plaintiff's first claim against Officers Donovan, Parquette, and Brisendine ("Officer Defendants") in their individual capacity,[2] the Court undertakes a two-part inquiry.  First, viewing the facts in the light most favorable to Plaintiff, the Court must determine if any of the Officer Defendants' actions constitute excessive force in violation of the Fourth Amendment. *See A. K. H by & through Landeros v. City of Tustin*, 837 F.3d 1005, 1010 (9th Cir. 2016).  Without a violation,

---

[2] Plaintiff lists in his Second Amended Complaint that his claims against Officer Defendants are partly in their official capacities. (Sec. Am. Compl. at 2).  However, state officers sued in their official capacity are not "persons" for purposes of an action pursuant to 42 U.S.C. § 1983, so "generally, they may not be sued under the statute." *Williams v. Las Vegas Metro. Police Dep't*, No. 2:14-cv-414-APG-PAL, 2014 WL 6473616, at *2 (D. Nev. Nov. 17, 2014); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).  Moreover, Plaintiff's claims against Officer Defendants appear to focus on monetary relief, especially since the only injunctive relief requested is medical treatment for his nose (which as explained in this Order would not concern any Officer Defendant). (Sec. Am. Compl. at 9) (seeking $10,000 in compensatory damages and $10,000 in punitive damages).  Because the claims against Officer Defendants in their official capacity for monetary relief are not actionable, and because the only request for injunctive relief does not concern Officer Defendants, the Court grants summary judgment in favor of Officer Defendants to the extent that Plaintiff brings his claims against them in their official capacities. *Cf. Wolfe v. Strankman*, 392 F.3d 358, 365 (9th Cir. 2004) (explaining that a claim can proceed against a state official in his or her official capacity under § 1983 when that official is sued for injunctive relief).

1  Plaintiff's claim fails from the outset.  If excessive force occurred, however, the next step is to
2  determine if the law at the time of the challenged conduct "clearly established" that the conduct
3  was unlawful. *Id.*; *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018).  "For a right to be
4  clearly established, case law must ordinarily have been earlier developed in such a concrete and
5  factually defined context to make it obvious to all reasonable government actors, in the
6  defendant's place, that what he is doing violates federal law." *Shafer v. Cty. of Santa Barbara*,
7  868 F.3d 1110, 1117 (9th Cir. 2017).  Plaintiff holds the burden at both steps of the inquiry to
8  establish his claim and overcome the Officer Defendants' assertion of qualified immunity.
9  *Felarca*, 891 F.3d at 815.

### i. *Excessive Force*

Courts evaluate the reasonableness of force under "an 'objective' inquiry that pays 'careful attention to the facts and circumstances of each particular case.'" *Cty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1546 (2017) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)).  The guiding considerations on reasonableness are: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Zion v. Cty. of Orange*, 874 F.3d 1072, 1075 (9th Cir. 2017) (quoting *Graham*, 490 U.S. at 396).  That said, the most important of these factors is "whether the suspect posed an 'immediate threat to the safety of the officers or others.'" *A. K. H by & through Landeros*, 837 F.3d at 1011 (quoting *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc)).

After considering the above-stated factors alongside the totality of the circumstances here, the Court finds that Plaintiff has not provided evidence of excessive force by any Officer Defendant.  Officer Donovan's actions of tackling Plaintiff as he attempted to flee and a single closed-fist punch to Plaintiff's nose is, at most, an intermediate level of force. *See, e.g.*, *Mbegbu v. City of Phoenix*, No. CV-16-00424-PHX-DGC, 2017 WL 4679260, at *3 (D. Ariz.

Oct. 18, 2017); *Russell v. City & Cty. of San Francisco*, No. C-12-00929-JCS, 2013 WL 2447865, at *10 (N.D. Cal. June 5, 2013). The ultimate severity of the crime leading to Plaintiff's arrest supports that use of force as reasonable. Though the incident began based on driving with a suspended license plate, the uncontroverted facts show that the situation quickly progressed to Officer Donovan suspecting the presence of a weapon on the occupants or in the car. That suspicion required a pat down search, which quickly turned to Plaintiff fleeing while appearing to conceal a gun in his waistband. Plaintiff's flight and active attempt to evade arrest with a suspected firearm thus created an "immediate threat to the safety of officers or others." *See Zion*, 874 F.3d at 107. Indeed, Officer Donovan's declaration provides evidence to justify the tackling and single punch to Plaintiff's face as a necessary act to prevent Plaintiff from gaining control of the suspected weapon during the ensuing struggle:

> Barely having any control over [Plaintiff] and afraid he was going to be able to break away again and have the option to flee into the dense residential area or engage me in a fight and my heightened suspicion that he may be armed with a firearm on his right side and this right arm about to become free, I struck Avery one time with a closed left fist striking him in the nose causing it to swell and bleed. (Decl. Arrest, Ex. A to Defs.' MSJ).

Plaintiff's recitation of the facts slightly differs from the declaration by Officer Donovan, but even Plaintiff's facts do not reveal excessive force. He asserts in his verified Second Amended Complaint that Officer Donovan began "roughing" him upon catching Plaintiff even though Plaintiff "raised his hands in a clear sign of surrender." (Sec. Am. Compl. at 4); *cf. Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (explaining that a verified complaint or motion signed under the penalty of perjury may be used as evidence in opposition to a motion for summary judgment). Plaintiff adds that Officer Donovan punched him in the nose only after Officer Brisendine began placing Plaintiff's hands behind his back to apply handcuffs. (*Id.*). Plaintiff then alleges that Officer Parquette "slammed [Plaintiff] head first into the side of the police car" while handcuffed when Officer Donovan exclaimed that Plaintiff

"has a gun!" (Sec. Am. Compl. at 4). Nevertheless, these statements by Plaintiff are vague and conclusory assertions that do not support the potential threat to the Officer Defendants' safety as having ceased before the use of force. In other words, Plaintiff's statements do not reveal that he appeared to be wholly unable to reach the firearm in his waistband while being handcuffed, that he did not appear to put up some type of struggle as Officers Donovan and Brisendine handcuffed him, that Officer Donovan's single punch occurred after Plaintiff no longer appeared to pose any threat of again breaking free with a loaded weapon in his possession, or that Officer Parquette's actions of slamming Plaintiff against the vehicle were anything other than an act to secure Plaintiff to avoid further flight or struggle once Officer Donovan discovered the weapon. (*Cf. id.*) (showing Plaintiff conceding that he wanted to discard the weapon "before being caught with it"). Accordingly, Plaintiff's statements alone do not create a genuine dispute of material fact as to whether any Officer Defendants' use of force occurred unnecessarily and without ongoing concern for their immediate safety and the safety of others.

The Court therefore finds that even when considering the evidence in the light most favorable to Plaintiff and taking Plaintiff's allegations as true, Officer Defendants' actions during arrest do not amount to excessive force in violation of the Fourth Amendment. *See Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("'Not every push or shove, even if it may seem unnecessary in the peace of the judge's chambers,' . . . violates the Fourth Amendment"))).[3]

### ii. *Clearly Established*

Even if Plaintiff's evidence could create a genuine dispute of material fact about excessive force, the circumstances here do not constitute a violation of clearly established law

---

[3] Plaintiff's first claim for excessive force does not allege that LVMPD had a policy or custom authorizing excessive force, thereby subjecting it to potential liability. Nor does Plaintiff make such an argument in his Motion for Summary Judgment. The Court thus has no basis to construe his claim as such.

at the time of arrest.  Plaintiff does not cite any authority to support his arguments for summary judgment, and the Court's independent search did not reveal a decision showing Officer Defendants' at-issue conduct during arrest could constitute excessive force under clearly established law at that time. *Cf. Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) ("Neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force."); *Shafer*, 868 F.3d at 1118 (finding no violation of clearly established law when dealing with an officer who "progressively increase[d] his use of force from verbal commands, to an arm grab, and then a leg sweep maneuver" with a misdemeanant who merely "refuse[d] to comply with the officer's orders and resist[ed], obstruct[ed], or delay[ed] the officer in his lawful performance of duties such that the officer ha[d] probable cause to arrest him in a challenging environment"); *Tuuamalemalo v. Las Vegas Metro. Police Dep't*, No. 2:16-cv-00619-JAD-VCF, 2018 WL 11016234, at *7 (D. Nev. Mar. 27, 2018), *aff'd and remanded sub nom. Tuuamalemalo v. Greene*, 946 F.3d 471 (9th Cir. 2019) ("Other circuits also recognize that punching a suspect in self defense or to make an arrest is not necessarily unconstitutional.").  Consequently, Plaintiff has not satisfied his burden to overcome Officer Defendants' assertion of qualified immunity, warranting summary judgment in Officer Defendants' favor.

**B. Violation of Fourth, Eighth, and Fourteenth Amendments: Medical Treatment**

Plaintiff asserts in the second claim violations of his Fourth, Eighth, and Fourteenth Amendment rights from officials at CCDC failing to provide medical care upon Plaintiff's arrival at the facility after arrest. (Sec. Am. Compl. at 6).  According to Plaintiff, he pointed out to booking officials that he "had a broken nose" and experienced "extreme pain" as well as "difficulty breathing" due to his bloody nose, but officials "laughed at [him] and told [him] to shut up." (*Id.*).  Additionally, when Plaintiff saw a nurse during booking, the nurse "refused to provide treatment." (*Id.*).  Plaintiff states that officials later sent him to a holding area without

treatment, and this delay in treatment "is still causing him breathing issues to this day." (*Id.*).

## i. *Participation or Direction by Named Defendants*

At the outset, one of the fatal deficiencies with Plaintiff's second claim is that it does not allege or provide evidence showing any of the Officer Defendants being responsible for the apparent lack of medical treatment at CCDC.[4] Nor does he state that the Officer Defendants knew after arrest and during booking that Plaintiff would not receive medical care. Without evidence of their participation or direction in the lack of medical treatment, Plaintiff's second claim necessarily fails to the extent it seeks to impose liability against any Officer Defendants. *See, e.g.*, *Tate v. Univ. Med. Ctr. of S. Nev.*, 637 F. Supp. 2d 892, 897 (D. Nev. 2009) ("Absent an official's participation or direction in the violation of a plaintiff's constitutional rights, he cannot be held personally liable in an individual-capacity suit under § 1983."); *Hill v. Las Vegas Metro. Police Dep't*, 197 F. Supp. 3d 1226, 1233 (D. Nev. 2016), *aff'd*, 705 F. App'x 616 (9th Cir. 2017); *Collins v. Neven*, 812 F. App'x 595 (9th Cir. 2020) (affirming the district court's grant of summary judgment on a claim for medical deliberate indifference because the plaintiff failed to provide evidence of the named defendants' personal involvement with plaintiff's medical care).

Moreover, the only specific officials who Plaintiff lists with his second claim are the "booking officer on duty" and the "nurse" who purportedly denied treatment. (Sec. Am. Compl. at 6). Plaintiff stated in his Second Amended Complaint that he intended to learn through discovery the names of these officials so that he could identify them for the Court. (*Id.*). Yet Plaintiff neither amended his claims to name these officials nor filed information with the Court

---

[4] Plaintiff could be asserting in his second claim that the Officer Defendants failed to provide medical treatment *before* Plaintiff arrived at CCDC. However, Plaintiff provides no allegations or evidence that any Officer Defendants refused to provide minimal treatment immediately after arrest or were deliberately indifferent to Plaintiff's need for medical care with his bleeding nose prior to booking at CCDC. The Court thus has no basis to infer such facts or that Officer Defendants had any involvement with the allegedly deficient medical treatment while at CCDC.

1 to identify them—and the deadline to do so has passed. (Scheduling Order, ECF No. 44); (Order Granting Mot. Extend Discovery Deadlines, ECF No. 53). As a result, the only named Defendant who could potentially be liable in Plaintiff's second claim is LVMPD as the entity which operates CCDC. *See Denson v. Clark Cty.*, No. 2:10-CV-00525-RCJ, 2010 WL 3076260, at *3 (D. Nev. Aug. 4, 2010); (*see generally* Sec. Am. Compl.). The Court's below discussion focuses on whether summary judgment is appropriate as to Plaintiff's second claim against LVMPD.

### ii. *Deliberate Indifference to Medical Needs*

Claims by pretrial detainees concerning a lack of medical care during detention arise under the Fourteenth Amendment rather than the Eighth. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018), *cert. denied sub nom. Cty. of Orange, Cal. v. Gordon*, 139 S. Ct. 794 (2019). To support a claim against LVMPD, Plaintiff must show: (1) an LVMPD employee violated his constitutional right to medical treatment while in pretrial detention; (2) LVMPD had a custom, policy, or practice that amounted to deliberate indifference; and (3) that LVMPD's custom, policy, or practice was the moving force behind the LVMPD employee's violation of Plaintiff's constitutional right. *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) (explaining that municipalities may be liable under § 1983 for "constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker."); *Gardner v. Las Vegas Metro. Police Dep't*, No. 2:17-CV-00352-PAL, 2019 WL 1923634, at *17 (D. Nev. Apr. 29, 2019). Courts consider these elements for "deliberate indifference" through an objective standard. *Gordon*, 888 F.3d at 1124.

Here, while Plaintiff's medical indifference claim alleges actions of several CCDC officials laughing at him upon his arrival and one nurse refusing to provide treatment during booking, these allegations crucially lack any facts showing such actions as stemming from a

custom, policy, or lack of training at CCDC. (*See generally* Sec. Am. Compl.); (Pl.'s MSJ, ECF No. 72). That said, at least one court in this District has recognized how a severe injury coupled with "significant" delay in treatment of that injury may render it plausible that a municipal entity had a policy, custom, or practice causing the claimed deliberate indifference to medical care. *Cf. Repass v. Clark Cty. Det. Ctr.*, No. 2:13-CV-00237-APG, 2014 WL 335040, at *6 (D. Nev. Jan. 29, 2014) (finding it plausible that LVMPD had a policy, custom, or practice causing the claimed deliberate indifference to medical care, even though the plaintiff's allegations did not identify a precise policy or custom at issue, because "the significant alleged delay in treatment of [several gunshot wounds in] his arm—eight months—'is not the type of thing that goes unnoticed by supervisors and policy making officials'" (quoting *Plonsky v. Las Vegas Metro. Police Dep't*, No. 2:11–cv–00026, 2011 WL 2680733 at *3 (D. Nev. 2011))). But here, Plaintiff's allegations and evidence do not reveal this as such a case. Plaintiff provides no evidence of medical records showing the severity of his injuries "to this day" or breathing issues at the time of his arrest. Further, Plaintiff does not provide evidence of a denied attempt to secure treatment after initial booking. Plaintiff's evidence showing his bloody nose at the time of arrest also does not reveal a significant injury supporting an inference that officials operated under a policy, practice, or custom of being deliberately indifferent to Plaintiff's medical needs while entering and during pretrial detention.

Accordingly, Plaintiff's allegations and evidence are not sufficient to sustain his burden at this summary judgment stage. Plaintiff has not shown a genuine dispute of material fact about LVMPD having a policy, custom, or practice of deliberate indifference to medical treatment causing injuries here. *See Horton by Horton*, 915 F.3d at 603 ("A municipality may not, however, be sued under a *respondeat superior* theory. A plaintiff must therefore show 'deliberate action attributable to the municipality [that] directly caused a deprivation of federal rights.'") (internal citations omitted). The Court accordingly grants summary judgment in

favor of Defendants as to Plaintiff's second claim of deliberate indifference to medical treatment while in pretrial detention.

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 67), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 72), is **DENIED**.

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this __18__ day of August, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court